[Cite as *Abbott v. Abbott*, 2020-Ohio-5599.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| DINISE A. ABBOTT | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, J. |
| -vs- | : | |
| | : | |
| TERRY L. ABBOTT | : | Case No. CT2020-0016 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Appeal from the Muskingum County
Court of Common Pleas, Domestic
Relations Division Case No. DB
2017-0968

JUDGMENT:    Reversed and Remanded

DATE OF JUDGMENT:    December 8, 2020

APPEARANCES:

For Plaintiff-Appellee                     For Defendant-Appellant

ROSE M. FOX                                JOHN H. COUSINS IV
Fox Law Office                             Grossman Law Offices LLC
233 Main Street                            32 W. Hoster Street, Suite 100
Zanesville, Ohio 43701                     Columbus, Ohio 43215

*Baldwin, J.*

**{¶1}** Defendant-appellant Terry L. Abbott appeals from the February 27, 2020 Judgment Entry of the Muskingum County Court of Common Pleas, Domestic Relations Division.

STATEMENT OF THE FACTS AND CASE

**{¶2}** Appellant Terry L. Abbott and appellee Dinise A. Abbott were married on August 22, 1990. On November 28, 2017, appellee filed a complaint for divorce against appellant. Appellant filed an answer on December 6, 2017.

**{¶3}** A Decision and Judgment Entry was filed on August 31, 2018. The trial court, in the same, found that appellant had worked numerous positions in the construction pipeline field and had recently earned in the range of $71,000.00 to $160,000.00 per year. The trial court further found that in 2017, appellant earned $121,418.00 and that his projected net pay for 2018 was $109,974.00.

**{¶4}** Pursuant to a Divorce Decree filed on September 28, 2018, appellant was ordered to pay spousal support to appellee in the amount of $1,000.00 per month until the death of either party or cohabitation by appellee with an unrelated adult. The trial court retained jurisdiction over spousal support.

**{¶5}** Thereafter, on August 23, 2019, appellant filed a Motion for Modification of Spousal Support. Appellant, in his motion, argued that his gross annual wages had not met the court's expectations and that, effective August 7, 2019, he had a new employer and no longer was receiving per diem or truck pay.

{¶6}    A hearing on appellant's motion was held on February 14, 2020[1]. At the hearing, appellant testified that he was living with his new wife and her daughter. When asked if his income had changed since he was ordered, in September of 2018  to pay spousal support in the amount of $1,000.00 a month, stated that it had changed "drastically." Transcript at 6. Appellant testified that he had been laid off from his pipeline job the last week of July of 2019 and was unable to find other positions that were similarly situated with respect to earnings. He testified that he went to work for Trucco Construction.

{¶7}    Appellant testified that his 2018 gross earnings from MG Dyess were $34,300.00 as reflected on his W-2, but that at that time he also received per diem and truck pay.   Appellant testified that the total for all of the different places that he was employed in 2018 was $118,136.60 but that his take home pay was only $70,000.00. Appellant testified that, in 2019, his gross pay from ProGro Environmental was $29,450.00 for pipeline work. He testified that he was forced into accepting a position at Trucco Construction as an excavator and that he was presently employed there, but was actively attempting to get back on the pipeline.   He testified that he did not receive any pay from December 22, 2019 through January 6, 2020 from Trucco and that he did not receive any overtime pay and was not guaranteed 40 hours a week. When asked, appellant testified that his current rate of pay at Trucco was $37.14 an hour.

{¶8}    Appellant testified that he commuted approximately 70 miles to his job and that he did not receive per diem or truck pay from Trucco. All of his expenses traveling to and from the job was an expense to him. He testified that on average, he spent $190.00

---

[1] While numerous exhibits were introduced at the hearing, when a Staff Attorney called to have the same sent to this Court, she was advised that they had been destroyed .

a month on vehicle maintenance, $547.44 on his vehicle loan, $73.67 for insurance, and around $800.00 a month for fuel.  Appellant testified that he let repairs go because he was unable to afford them, but that he had repairs totaling $3,991.80 done on the truck between March of 2018 and September of 2019.

{¶9}   Appellant testified that he had maxed out his credit cards because he did not have any money in his monthly budget for these expenses. According to him, at the time of the divorce, his cards were not maxed out and they were not behind on payments. He testified that he was going into debt to pay the bills.  He testified that since his divorce, he had not saved funds for retirement. Appellant was 51 years old at the time of the hearing. He had no retirement available through Trucco, and was not vested in his union.

{¶10} Appellant testified that his wife was employed and earned around $32,000.00 a year and assisted with household expenses. He testified that he broke a bone in his foot, but delayed surgery because of the costs associated with not working for at least three weeks to recover.

{¶11}  Appellant testified that in January of 2019, his gross income was $10,376.00 and in 2020, it was $4,178.25 and that in January of 2019, his net income was $9,168.42 and in 2020, it was $3,118.84.  He asked the trial court to terminate his spousal support obligation so that he could ger back on his feet. He testified that he was not earning enough to support a $1,000.00 a month withdrawal from his paycheck for spousal support.

{¶12}  Appellant also testified that he took out a home equity line of credit through Huntington Bank in September of 2019 because he "needed something to fall back on to pay bills to make it through the winter and be able to survive. " Transcript at 31. He never

had a line of credit during his marriage to appellee. He used the line of credit to meet his monthly obligations.   He testified that the current balance on his line of credit was listed as $13,964.42, but that he thought it was actually down to around $10,000.00 by the time of the trial. Appellant also testified that, in September of 2019 and October of 2019, he was operating at a net monthly deficit. In September the deficit was $2,447.17 and in October it was an excess of $2,000.00.

{¶13}  On cross-examination, appellant testified that he took a weekend trip to Tennessee in October and that his wife paid for the lodging. He testified that he did not use his truck to do his work but used it as transportation to work. He testified that between August and December of 2019, he grossed $26,385.00 and part of the money was from overtime. According to appellant, there had since been a ban on overtime.  Appellant testified that when he was working on the pipeline, the per diem was for living expenses since he had to live on the road and that he was not living on the road at the time of the trial so did not have to pay for a hotel or housing away from work.

{¶14}  He testified that the home equity line was taken out in August or October of the last year and that he was behind $4,000.00 in spousal support and that he was behind on spousal support when the divorce was finalized.

{¶15}  Appellee testified that she lived at her parents' property and that, at the time of the divorce, was not employed and it was not anticipated that she was going to become employed. She testified that she had been employed as a housekeeper at Genesis Hospital since January of 2018.  She testified that her wages for 2018 were $18,502.00 and that, other than her wages, she had income of $19,479.00 for 2018. Her rate of pay was $10.96 an hour and she worked 40 hours a week. Appellee testified that she did not

have any other sources of income and lived alone. She asked that spousal support remain the same because she had nothing left after paying her bills. Appellee testified that her electric budget was around "two something" every month and that she split the bill for property taxes with her father and brother. Transcript at 56. Appellee did not pay any rent. The full year for property taxes was $608.24. She testified that she was paying monthly on a credit card from T.J. Maxx and had a balance on her credit card to Lowe's in the amount of $929.69 after purchasing a washer and dryer. She also had a Kohl's credit card that she was paying on.

{¶16} Appellee testified that she paid $89.33 a month for car insurance. She testified that she had on ongoing bill with Genesis Healthcare for treatment for bladder cancer. She had health insurance through her employer and had a plan to pay Genesis $26.50 a month. Her balance was around $923.00. Appellee testified that she was still undergoing treatment for bladder cancer. She testified that there was a Genesis bill that appellant was to pay as part of the divorce and that he had not paid the same and it was added to her bill. Appellee pays $16.30 a month for life insurance, $42.50 a month for trailer insurance, and approximately $76.00 for trash pickup. She pays $60.00 a month for phone and between $200.00 and $300.00 a month for groceries.

{¶17} Appellee testified that she purchased a 2016 Ford Escape in August of 2019 because her other vehicle kept breaking down and that she paid $354.76 a month for the car. She testified that her home was in poor condition and needed roof repairs but that she could not afford repairs. She testified that her only retirement was a 403(b) through her current employer and social security. She testified that she could not afford her monthly expenses without the spousal support award. Appellee testified that she had to

buy uniforms for work and was not reimbursed for them and that she spent around $30.00 a week on gasoline. She testified that in April of 2019 she got a 30 cent an hour raise and that they usually got a yearly raise. Appellee tested that she had gross pay of $883.20 and net pay of $633.29 every two weeks.

{¶18} On cross-examination, appellee testified that she grossed around $20,000.00 from Genesis according to her 2019 W-2. She testified that her 2019 W-2 reflected a couple of thousand dollars more than her 2018 W-2. Appellee testified that she was contributing $58.14 a month to her 403(b). At the time of the divorce, the balance on her TJ Maxx card was $5,242.51 but the Lowe's account was a new account since the divorce. She further testified that the balance owed on her Kohl's account was around $900.00 with a $27.00 a month minimum payment.

{¶19} Appellee testified that her monthly expenses were approximately $1,500.00 and her net take home pay was approximately $1,300.00. Appellee, at the time of the divorce, was spending approximately $500.00 a month on cigarettes and admitted that that would have been included as part of her budget. She testified that she spent two or three hundred dollars a month on cigarettes and alcohol, but was unsure of the amount except to testify that it was probably less than the $500.00 she disclosed at the time of the divorce. Appellee testified that she was getting around a $1,200.00 tax refund.

{¶20} Appellee testified that when she was married to appellant, they did not take vacations but that since the divorce, she had gone camping and had traveled to the Outer Banks and Put-In-Bay. Appellee testified that she only had to pay for her food and drink. She testified that she did not have to take out any personal loans to make her monthly expenses and that the trailer she lived in was the trailer that she lived in during her

marriage. There was no line of credit attached to her home and appellee was not maxed out on her credit cards. She testified that the vehicle that she purchased was used. Appellee testified that the expenses that she had for smoking was known by the court at the time of the divorce, but that spousal support was awarded anyway.

**{¶21}** The trial court, as memorialized in Judgment Entry filed on February 27, 2010, denied appellant's Motion to Modify. The trial court found that while there had been a change in appellant's income, "the original spousal support award remains reasonable and appropriate…"

**{¶22}** Appellant now appeals, raising the following assignments error on appeal:

**{¶23}** "I. THE TRIAL COURT ERRED, ABUSED ITS DISCRETION, AND RULED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN DENYING APPELLANT'S MOTION TO MODIFY SPOUSAL SUPPORT."

**{¶24}** "II. ALTERNATIVELY, THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT MISCALCULATED APPELLANT'S ANNUALIZED INCOME FROM HIS NEW EMPLOYMENT."

II

**{¶25}** Appellant, in his second assignment of error, argues that the trial court erred and abused its discretion when it miscalculated appellant's annualized income from his new employment. We agree.

**{¶26}** A trial court's decision to modify spousal support will not be reversed absent an abuse of discretion. *Brzozowski v. Brzozowski*, 8th Dist. Cuyahoga No. 101013, 2014-Ohio-4820, ¶ 20. In order to find an abuse of discretion, we must determine that the trial

court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). Dist.1996).

**{¶27}** In the case sub judice, trial court found that, while there had been a change in appellant's income, the original spousal support remained reasonable and appropriate and denied appellant's motion to modify the same.

**{¶28}** With respect to appellant, the trial court found that, at the time of the divorce, appellant had a work history including numerous positions in the construction pipeline field earning $71,000.00 to $161,000.00 annually. The trial court found that, in 2017, appellant earned $121,418.00 and, in 2018, he was projected to earn approximately $110,000.00. The trial court further found that after the divorce, appellant was laid off from his position with the pipeline company and was unable to find equivalent employment. At the time of the hearing, appellant was earning $37.14 an hour or $77,251.00 annually based on a forty hour work week. The trial court found that although overtime was not currently available to appellant, it would likely be available again in the future.

**{¶29}** The trial court further found that for the period of August 6, 2019 through December 6, 2019, appellant grossed the sum of $26,385.00 which it annualized to $105,540.00. The trial court stated, in relevant part, as follows: "The Court finds Defendant cannot be certain with regard to his income with Trucco Construction. As is stated above, at a straight forty hour week he would earn $77,251.00. Based upon his history with Trucco Construction for the last four months of 2019 he would earn $105,540.00. The Court finds that actual earnings of 2019 represents a reasonable expectation of Defendant for 2020 and in the future and finds that to be $88,9070.00. (sic)"

**{¶30}** However, the period from August 6, 2019 through December 6, 2019 is a four month period. Thus, the trial court erred when it multiplied $26,385.00 by four in arriving at an annualized income of $105.540.00 for appellant. The trial court should have multiplied the $26,385.00 by three and arrived at a figure of $79,155.00. We believe this mathematical miscalculation is of sufficient size to merit reversal of the trial court's decision. Nevertheless, we find fundamental fairness mandates a reversal and remand to the trial court to reconsider appellant's motion using the corrected annualized income figure for appellant. It is clear that the trial court relied on  the $105,540.00 figure in determining appellant's earning capacity in this case.

**{¶31}** Appellant's second assignment of error is, therefore sustained. Based on our disposition of appellant's second assignment of error, appellant's first assignment of error is premature.

{¶32} Accordingly, the judgment of the Muskingum County Court of Common Pleas, Domestic Relations Division, is reversed and this matter is remanded for further proceedings consistent with this Opinion.

By: Baldwin, J.

Hoffman, P.J. and

Delaney, J. concur.